UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| DAVID and CAROLINE ADELMAN,<br><br>Plaintiffs,<br><br>- vs -<br><br>COASTAL SELECT INSURANCE COMPANY,<br><br>Defendant. | Civil Action No.: 9:17-cv-3356-PMD<br><br>**COMPLAINT** |

Plaintiffs David and Caroline Adelman ("Plaintiffs") by and through their attorneys, allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for breach of contract, bad faith, promissory estoppel and attorneys' fees under a Homeowners insurance policy (the "Policy") Plaintiffs purchased from defendant Coastal Select Insurance Company ("Coastal Select").

## PARTIES

2. Plaintiffs are residents of New York having their principal address at 147 West 79th Street, Apartment 9A, New York, NY 10024.

3. Coastal Select is a corporation with its principal place of business at 1455 Oliver Rd, Fairfield, CA.  Coastal Select is authorized to sell insurance in the State of South Carolina by the South Carolina Department of Insurance and does sell insurance and transact business in the State of South Carolina.

1

JURISDICTION AND VENUE

4.     Jurisdiction is premised upon 28 USC § 1332 in that this is an action between citizens of different states and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

5.     Venue is proper in this district because the insured property which is the subject of this action is located at 16 Turnberry Lane, Hilton Head Island, South Carolina.

BACKGROUND

6.     Coastal Select sold a Homeowners insurance policy to Plaintiffs for their property at 16 Turnberry Lane, Hilton Head Island, South Carolina (the "Property") for the Policy Period October 26, 2016 to October 26, 2017, providing policy limits of $610,000 for dwelling, $152,000 for Personal Property and $61,000 for loss of use of the Property. Plaintiffs paid a premium of $4,152.00.

7.     On July 4, 2017, Nelson Adelman, Plaintiff David Adelman's father, visited the Property. He was very familiar with the home because he had lived there for more than a decade before selling it to his son and daughter-in-law. He visited the home late that evening and was in the master bathroom. He did not observe any water on the master bathroom floor.

8.     At approximately 9 am, on July 5, 2017, Becky Adelman, Plaintiff David Adelman's sister-in-law, entered the home and discovered water on the floor of several rooms in the single story building. The carpets were wet and water was visible on some of the wood flooring in the room that shared a wall with the master bathroom. She

telephoned Nelson Adelman who contacted Low Tide Plumbing ("Low Tide"). Low Tide arrived shortly thereafter and turned off the water at the meter. The Low Tide plumber then inspected the interior of the home, including turning the water on and off again at the meter. He told Nelson Adelman a cold water supply pipe had burst under the master bathroom causing parts of the home to suddenly flood.

9.     Also on the morning of July 5, 2017, before the plumber from Low Tide had arrived, Nelson Adelman telephoned Plaintiff David Adelman, who called the insurance agency which had sold him the Policy, Kinghorn Insurance. David Adelman spoke with Jennifer Wells. He described the water at the home. Ms. Wells told David Adelman he should call a water damage mitigation company. Ms. Wells provided to David Adelman the telephone number for Rainbow International and said Kinghorn Insurance had worked with them in the past. Ms. Wlls said she would send numbers for other mitigation services companies if Rainbow International was not available. She said an adjustor from Coastal Select would be in touch and would direct the mitigation company.

10.     Ms. Wells assured David Adelman during the telephone conversation the water damage and cost of mitigation services would be covered by the Policy once the deductible was met. Also during that conversation, Ms. Wells said she would check the Policy for details including the amount of the deductible. David Adelman called Rainbow International who sent a crew that was met at the property by Nelson Adelman.

11.     Approximately two hours later, Ms. Wells sent an email to David Adelman with the telephone number of Rainbow International and two other mitigation services

3

companies. David Adelman replied by email letting Ms. Wells know that Rainbow International had responded and was at the property with a crew. David Adelman's email to Ms. Wells also stated, "[p]lease advise regarding deductibles and other pertinent information." Approximately 90 minutes later, Ms. Wells replied by email to David Adelman saying "[t]he All other perils deductible is $1,000. Your claim # is EC17500076. An adjustor will be contacting Nelson in the next 24 hours. If you need anything else please let us know."

12. That same day, Ms. Deborah Whitehurst contacted Plaintiff David Adelman, identified herself as the adjustor for Coastal Select and explained that she was not based in Hilton Head Island but would be traveling to the Property from Charleston once she completed work at a different site.

13. Ms. Whitehurst was aware that Rainbow International was at the site and explained to David Adelman that she would work directly with Rainbow International. She emphasized that she was an experienced adjustor. During that call, David Adelman inquired of Ms. Whitehurst regarding coverage for the costs of the mitigation services and the damage to the Property. Ms. Whitehurst said she was in possession of the information about the Policy covering the property and that the deductible was $1,000. She said she was reading this from information provided to her by the insurer. She explained in great detail that once the deductible was met, Plaintiffs would only be responsible for the cost to repair the pipe. She emphasized this point multiple times saying once the deductible was met "only the repair of the pipe itself not the cost of

4

repairing the foundation or the floor of the bathroom or anything else" would be Plaintiffs' responsibility. She said, "that's what insurance is for."

14. On July 5 and July 6, 2017 the crew from Rainbow International removed wood flooring and carpeting from most of the Property. Rainbow International also removed all floor molding and cut approximately 6 inches of drywall from the walls throughout the Property. Ms. Whitehurst communicated directly with Rainbow International during July 5 and July 6, 2017. She instructed Rainbow International to remove and discard the flooring and the carpeting. She advised Rainbow International to take photographs and save samples of the flooring and carpeting.

15. On July, 6, 2017, Ms. Whitehurst called Plaintiff David Adelman to report on the progress of the mitigation crew and to inform him they would be disposing of the flooring. She also said Plaintiffs would be reimbursed for expenses associated with their loss of use of the Property and that David Adelman should call the desk adjustor, James Edwards, to discuss loss of use of the Property during the time it would take to complete any repairs. Ms. Whitehurst provided an email address and telephone number for Mr. Edwards to David Adelman.

16. David Adelman emailed Mr. Edwards on the afternoon of July 6, 2017. Mr. Edwards responded by calling David Adelman. Mr. Edwards informed David Adelman he was aware of the claim and that Ms. Whitehurst was working with Rainbow International. Mr. Edwards inquired as to whether David Adelman's family needed to

stay at a hotel and told him the Policy would also pay for food for his family until the repair work was completed.

17.     David Adelman let Mr. Edwards know that once the Plaintiffs arrived in Hilton Head Island the next day they would stay with relatives and that it would not be necessary to reimburse his family for food.  Mr. Edwards assured Mr. Adelman again that the Policy covered water damage and repeated almost verbatim the language used by Ms. Whitehurst that Plaintiffs would only be responsible for the deductible and the "cost to repair the pipe."

18.     David and Caroline Adelman arrived in Hilton Head Island late the night of July 6, 2017 and went to 16 Turnberry Lane the morning of July 7, 2017.  The Rainbow International crew arrived shortly thereafter for their third day at the property.  By then most of the flooring, carpeting, molding and the six inch high section of the dry wall had been removed.  Rainbow International informed David and Caroline Adelman that Ms. Whitehurst had instructed them to remove the remainder of the flooring and molding and to continue to cut into the dry wall.  David Adelman witnessed a member of the Rainbow International crew speaking with Ms. Whitehurst by telephone.  Ms. Whitehurst separately called David Adelman telling him the Rainbow International crew indicated to her there were two rugs which were wet and that Plaintiffs should allow Rainbow to take those rugs with them to be cleaned.  Ms. Whitehurst said to David Adelman, "don't worry, this is all covered and the rugs will be professionally cleaned."

19.     Rainbow International removed and disposed of the remainder of the flooring and continued their work cutting through the walls throughout the home.  By the end of the day July 6, 2017 Rainbow had removed all of the flooring and carpeting and had cut the walls throughout the Property.  Rainbow International left equipment at the Property over the weekend.  The Rainbow International crew did not find any mold in the home with the exception of one small area behind the refrigerator in the kitchen. There was no evidence of damage caused by a slow leakage of water under the master bathroom.

20.     Late in the afternoon of July 7, 2017 Ms. Whitehurst called David Adelman saying she had been coordinating with Rainbow International.  She informed David Adelman that she would come to the property after the weekend, on July 10, 2017.  During that conversation, Ms. Whitehurst said she would forward to David Adelman a Property Worksheet to help him take inventory of personal property that was damaged.

21.     On July 10, 2017,  Ms. Whitehurst came to the property.  Plaintiffs were no longer at Hilton Head Island but had arranged for Ms. Whitehurst to have access to the home by Mr. Jack Resnick who had been hired by David and Caroline Adelman to assist.  During that meeting, Ms. Whitehurst discussed in great detail the items which would be covered by the policy, including replacement flooring, carpets, repair and painting of the walls. She also requested that Mr. Resnick contact a leak detection service to assist with identifying the precise location of the burst pipe under the foundation so that she could determine the costs of accessing the area and repairing damage done to the bathroom floors and fixtures once the pipe had been replaced.  Ms. Whitehurst also asked Mr.

7

Resnick for any information available regarding the original quotes for flooring and carpet. Ms. Whitehurst said she would send samples to a lab to assist the insurer in determining how much would be reimbursed to Plaintiffs.

22.     On July 12, 2017, at Ms. Whitehurst's request, and with the consent of David and Caroline Adelman, Mr. Resnick met at the property with a leak detection company, All Phase Electric and Plumbing. The company technician turned the water on and used a leak detection device. Water poured into the master bathroom within a few seconds after the water was turned on. Mr. Resnick took a photograph of the water pouring into the bathroom from the burst pipe. By email that afternoon, Mr. Resnick stated "it's a strong flow" and "it is clear it is not a pin hole or slow leak." All Phase used the leak detection device to analyze the water rushing from the pipe to identify the precise location of the burst section of pipe. Paul Ford, Jr. from All Phase, in his written conclusion stated, "[w]ater running very fast due to pipe explosion break under slab." A copy of the All Phase report was provided to Mr. Edwards.

23.     By email on July 12, 2017, Ms. Cherie Taylor of Kinghorn Insurance informed David Adelman that she had requested a copy of the Policy. In a follow-up telephone conversation, Ms. Taylor apologized for any delay, stating that Jennifer Wells was the person at Kinghorn Insurance responsible for the Policy and that she was away from the office.

24.     In a letter dated July 14, 2017, Mr. Edwards informed David Adelman that "[d]uring our initial investigation and after review of your policy, questions have come up

with regards to coverage for your loss." None of the insurer representatives had engaged in an investigation of the property at that time. The only representative of the insurer who had been to the property was Ms. Whitehurst who was at the property on July 10, 2017 and continued to assure Plaintiffs and state to Mr. Resnick that the costs associated with the damage were covered.

25.     The July 14, 2017 letter stated that the insurer wanted to send a plumber with a leak detection device to the site to conduct an investigation.

26.     On or about July 14, 2017, Mr. Greg Edmonson called David Adelman and informed him that James Edwards and Deborah Whitehurst were no longer assigned to the claim.

27.     David Adelman informed Mr. Edmonson that he would make the property available to Defendant's engineering company Rimkus Engineering and Defendant's plumber on the condition that the insurer agreed to pay for any damage done by Rimkus. By email dated July 19, 2017, Mr. Edmonson indicated to David Adelman there would be no demolition during the site visit and thus no reason to discuss damage done by Rimkus or the plumber with whom Rimkus and Defendants worked.

28.     David Adelman arranged for Mr. Resnick to give access to the house to Rimkus and the plumber on August 17, 2017. Rimkus entered the home accompanied by the plumber, John Moxley. David Adelman had engaged a South Carolina licensed engineer,

Mr. Mike Thomas, of Thomas and Reel Engineering, to be present to observe the inspection.

29.    Contrary to the reassurances given to Plaintiffs by Mr. Edmonson, during the site inspection, Mr. Moxley used a chisel to open an approximately 20-inch in diameter hole in the foundation of the home. Before taking any photographs, Mr. Moxley reached into the hole he had created in the foundation. He apologized to Mr. Thomas and the representative from Rimkus and stated that in doing so he had altered and damaged the condition of the pipe with his hand. No photographs were taken of the pipe before it was altered and damaged by Mr. Moxley.

30.    On August 28, 2017, Mr. Thomas sent a report to Plaintiffs stating, "[i]n my opinion, the leak in the cold water supply line was caused by a sudden eruption of the pipe as evidenced by the fractured scale on the pipe, the shiny copper adjacent to the void and the eroded sand on the bathroom floor." A copy of the Thomas & Reel report was sent to Mr. Edmonson on August 29, 2017.

31.    By letter dated September 5, 2017, David Adelman informed Mr. Edmonson of the estimated cost to repair the damage caused by Rainbow International and water from the exploded pipe. The estimate for damages identified in the letter totaled $96,250. This was in addition to the bill from Rainbow International in the amount of $17,000.

32.    On September 27, 2017, Mr. William Fuge, a principal in Kinghorn Insurance left a voice mail for David Adelman stating that the insurer had called him to let him know

they intended to deny coverage of the claim. In his message Mr. Fuge said that in his "professional opinion he disagrees with that." In a subsequent conversation with David Adelman, Mr. Fuge again emphasized that he has been following this claim very closely and he "professionally disagrees with the decision to deny coverage."

33. On September 29, 2017, Mr. Edmonson sent a copy of a report prepared by Rimkus and a letter to Plaintiffs stating that Coastal Select was refusing to cover the cost of the damage.

### FOR A FIRST CAUSE OF ACTION
### Breach of Contract

34. Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

35. The Policy described herein constituted a valid and binding contract of insurance in force and effect on July 4, 2017.

36. The Policy requires Coastal Select to pay benefits due under the Policy to Plaintiffs for losses covered by the Policy, subject to the Policy's terms and conditions.

37. The loss suffered by Plaintiffs on or about July 4, 2017 is a loss covered by the Policy.

38. Plaintiffs have performed all conditions precedent to making a claim under the Policy.

39. Coastal Select has breached the Policy in the following particulars:

      a.     in failing to make payment for direct physical loss of and physical damage to covered property;

      b.     in failing to make payment for expenses to remove debris of covered property caused by the loss;

      c.     in failing to make payment for damage to Plaintiffs' personal effects by caused by the loss;

      g.     in failing to perform any other obligation owed to Plaintiffs under the Policy as a result of the loss claim which may be discovered during litigation or which occurs prior to resolution of this action.

40.    Coastal Select's breach of the Policy has resulted in damages sustained by Plaintiffs in the form of expenses for the repair of the Property, actions undertaken under Coastal Select's supervision by Rainbow International, damage to Plaintiffs' personal effects, replacement costs for Plaintiffs personal effects and other actual and consequential damages which may be discovered or occur after the date of this filing.

### FOR A SECOND CAUSE OF ACTION
### Bad Faith

41.    Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

42.    The Policy constitutes a valid and mutually binding contract of insurance between Plaintiffs and Coastal Select.

43.    Plaintiffs are due benefits for the loss under the terms and conditions of the Policy.

44. Coastal Select has refused and/or unreasonably delayed and continues to refuse and/or unreasonably delay payment of benefits to Plaintiffs.

45. Despite Coastal Select's knowledge of Plaintiffs' need for payment of benefits in order to restore the Property, Coastal Select has refused and/or unreasonably delayed and continues to refuse and/or unreasonably delay payment of advances on benefits due to Plaintiffs.

46. Coastal Select has unreasonably refused and continues to unreasonably refuse to acknowledge and act promptly on claims communications made by Plaintiffs.

47. Coastal Select has failed and continues to fail to promptly investigate Plaintiffs' claim.

48. Coastal Select has compelled Plaintiffs to file suit to obtain a timely adjustment of its loss claim.

49. Coastal Select has acted and continues to act unreasonably or in bad faith in breach of the implied covenant of good faith and fair dealing arising in the Policy.

50. Coastal Select's conduct as outlined above has resulted in actual damages to Plaintiffs in the amount of benefits due to Plaintiffs under the Policy.

51. Coastal Select's conduct as outlined above was and continues to be willful or in reckless disregard of Plaintiffs' rights under the Policy, thus entitling Plaintiffs to punitive damages as well as actual damages in an amount to be determined by the jury.

## FOR A THIRD CAUSE OF ACTION
### Promissory Estoppel

52. Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

53. Coastal Select's actual and apparent agents explicitly and unambiguously represented to Plaintiffs that the Policy covered the damage to the Property and that Coastal Select would reimburse Plaintiffs for remediation work at the Property, the details of which were actually supervised, managed and directed by Coastal Select's agents.

54. The Plaintiffs reasonably relied upon the unambiguous representations of Coastal Select's actual and apparent agents.

55. The Plaintiffs reasonable reliance upon the unambiguous representations of Coastal Select's actual and apparent agents was foreseeable by Coastal Select, which deliberately intended for the Plaintiffs to act exactly as they did, by turning over the remediation project to persons under Coastal Select's control in exchange for assurances that Coastal Select would reimburse Plaintiffs for all of their work.

56. The Plaintiffs have been harmed by their reliance upon the representations of Coastal Select's actual and apparent agents which were in the form of repeated promises that the damage to the Property and the work to repair it was covered by the Policy.

57. The Plaintiffs have incurred actual damages caused by their reliance upon Coastal Select's representations.

# FOR A FOURTH CAUSE OF ACTION
## Attorneys' Fees

58.  Plaintiffs repeat, reallege and incorporate each and every allegation contained in the previous paragraphs as if repeated herein verbatim.

59.  Coastal Select's failure to pay benefits due to Plaintiffs under the Policy is unreasonable or in bad faith.

60.  Pursuant to S.C. Code Ann. § 38-59-40, Plaintiffs are entitled to reasonable attorneys' fees in connection with the prosecution of this action.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

a.  Enter judgment against the Defendant in an amount to be determined by the trier of fact for actual, special, incidental, and consequential damages;

b.  Enter judgment against the Defendant in an amount to be determined by the trier of fact for punitive damages;

c.  Award attorneys' fees and costs to the Plaintiffs; and

d.  Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

By:  S/ Robert B. Ransom
Robert B. Ransom, Fed. Id. #4872
LEVENTIS & RANSOM
Post Office Box 11067
Columbia, SC 29211
803-765-2383
bertcone@aol.com

S. Lester Tate, III
AKIN & TATE
11 South Public Square
Cartersville, GA 30120
770-382-0780
lester@akin-tate.com

OF COUNSEL:

John B. Berringer
REED SMITH, LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022
212-205-6010
jberringer@reedsmith.com

ATTORNEYS FOR THE PLAINTIFFS